IN THE CIRCUIT COURT OF MARYLAND FOR HOWARD COUNTY

| | | |
|---|---|---|
| Law Offices of Mark J. Muffoletto, LLC<br>~~300 North Ridge Road~~<br>~~Ellicott City, MD 21043~~ | * | |
| Plaintiff | * | |
| v. | * | |
| American Recovery Service Incorporated<br>~~555 St. Charles Drive~~<br>~~Suite 100~~<br>~~Thousand Oaks CA 91360~~ | * | Case No.: <u>C-13-CV-20-000958</u> |
| ~~Serve On:~~<br>~~National Registered Agents, Inc. Of Md.~~<br>~~2405 York Road~~<br>~~Suite 201~~<br>~~Lutherville Timonium Md 21093~~ | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## FIRST AMENDED COMPLAINT

Plaintiff Law Offices of Mark J. Muffoletto, LLC by and through its attorneys, Christopher S. Young, Esq., and the Business & Technology Law Group, hereby files this <u>First Amended</u> Complaint and in support thereof states as follows:

### PARTIES

1. Plaintiff Law Offices of Mark J. Muffoletto, LLC ("MJM") is a registered Maryland limited liability company with its principal office in Howard County, Maryland. MJM is a law firm of attorneys licensed to practice law in the State of Maryland. MJM, established in 2001, is a predecessor to Amos & Muffoletto, LLC, formerly known as

Amos, Muffoletto & Mack, LLC, a Maryland limited liability company formed in 2011 ("A&M"). A&M terminated operations in June 2020.

2. Defendant American Recovery Service Incorporated ("ARSI") is a California corporation registered to do business in the State of Maryland. ARSI is a collection agency that routinely collects debt in the State of Maryland, and forwards accounts to Maryland attorneys for collections.

## STATEMENT OF FACTS

3. MJM began a relationship with ARSI on or about 2008. For a period of years, ARSI would forward accounts to MJM for legal action under different terms and legal agreements.

4. MJM has provided legal services consistently to ARSI's clients, including and predominately, American Express, throughout the State of Maryland, including Howard County, since the beginning of the relationship.

5. During the course of the relationship with ARSI, MJM rejected certain directives or terms placed on the relationship by ARSI. MJM and its attorneys believed that the demands by ARSI were unlawful and/or unethical. Among the objectionable directives were the sale of credit cards or creating new accounts for clients, disclosures amounting to legal advice, and disclosures which violated substantive law or the Maryland Rules.

6. Generally, when MJM objected, ARSI would threaten to remove inventory or issue ultimatums causing MJM to circumvent encountering the situation that would trigger the illegal or unethical directives. Most notably, owner and chief executive officer of ARSI, Tom Baxter ("Baxter"), on ~~more than~~ one occasion ~~even~~ threatened ~~stated outright to told~~ the managing attorney of MJM that if MJM~~he challenged~~~~ever~~ mentioned litigation over

2

the issues MJM~~he ARSI or~~raised, ~~Baxter expressed his opinionsthat concept~~ that MJM would be "black balled" and "ostracized" in the collection industry and that Baxter would personally assure it. ~~he never received work in the industry again.~~ ARSI's threats and actions created a strain on the relationship.

7. In early 2020 an account was placed with MJM regarding a debtor known as "Robinson". MJM negotiated a settlement with Robinson, which was expressly directed, and approved, by ARSI. After approving settlement, ARSI directed MJM to rescind the agreed upon settlement. ARSI's conduct against Robinson was driven by the intent to 'teach him a lesson'.

8. In an effort to rescind the Robinson settlement, ARSI was using a method and legal theory that MJM found legally incorrect and ethically prohibited. When MJM challenged the directive to rescind the Robinson settlement, ARSI began to retaliate against MJM.

9. In keeping with Baxter's previous threat, ARSI responded by terminating MJM, indicating that they were taking all of MJM's accounts back, despite extensive work being done on each file by MJM and placing them with another law firm for legal action. ARSI employees were told not to communicate with MJM. ARSI removed data from MJM computer access and failed to provide to MJM, timely or at all, documents and information to allow MJM to perform services on ARSI files. ARSI' actions were in direct response to MJM indicating they would not participate in the rescission of the Robinson settlement. The Robinson account was placed with another law firm, presumably one that would do what MJM refused to do.

10. ~~The owner and chief executive officer of ARSI~~Baxter, verbally terminated MJM, based on the Robinson account, in a phone call on November 16, 2020. ARSI attempted to

publicly characterize the termination in their favor by alleging that MJM terminated the relationship. ARSI claimed that they were simply turning off the forwarding of additional claims and taking back, most of its files placed with MJM.

11. As predicted by MJM, Robinson filed complaints with regulatory bodies, based on the action that MJM refused to take, including the CFPB and Maryland Consumer Protection Division. Unfortunately, the complaints were directed at MJM instead of the actual bad actor, ARSI.

12. MJM demanded indemnification from ARSI, <u>something</u> that <u>ARSI</u>they <u>had</u> repeatedly promised over the years. ARSI refused. MJM was forced to file claims with its insurance carrier, paying the cost of deductible payment, and incurring time and expense associated with responding to the complaints.

13. Around the same time <u>that</u> MJM demanded indemnification from ARSI, MJM also provided formal notice that it felt ARSI's retaliation was also due to MJM's objection to reprehensible conduct that amounted to sexual harassment and corporate conflicts of interest involving ARSI, its business partners, and its employees. These complaints were summarily ignored except to the extent that ARSI further retaliated as outlined below for the reporting and the demand for indemnification.

14. In an attempt to threaten MJM into silence and as retribution for requesting indemnification, ARSI had its legal counsel draft a letter claiming that there is no agreement between MJM and ARSI for legal services, accusing MJM of mishandling the Robinson account, claiming disgorgement of legal fees, and threatening a grievance against MJM attorneys. The letter was factually erroneous and defamatory.

4

15. When that letter did not produce the desired result, in retaliation for MJM's refusal to comply with demands to act unlawfully and unethically, demand for indemnification, and for bringing to light atrocious corporate conduct, ARSI recalled hundreds of accounts placed with MJM. The recall of accounts was for no clear business purpose, as MJM has been the top liquidation law firm in ARSI's attorney network three (3) years in a row prior to the COVID19 pandemic. ARSI's recall actions were simply retaliatory, in bad faith, and not in fair dealing.

16. The accounts taken from MJM by ARSI represent hundreds of hours of legal work, with a value of many hundreds of thousands of dollars.

## COUNT I
*Breach of Contract*

17. Plaintiff incorporates paragraphs one (1) through sixteen (16) as fully set forth herein.

18. MJM is the successor to A&M. MJM and ARSI had a written legal agreement for services, as amended. On or about September 13, 2017, A&M entered into a Forwarding Attorney Agreement (the "Forwarding Attorney Agreement") with ARSI governing the terms under which ARSI would forward certain debt accounts for legal action in Maryland to A&M, in the future. At the time in which the contract was entered into by the parties, ARSI had made threat of recall and the stop of forward flow of accounts if not executed.

~~18.~~19. In June 2020, MJM notified ARSI that it was taking over the accounts and relationship with ARSI from A&M, as a result of the reorganization of attorney activity and relationships at A&M and the ~~reorganization~~pending cessation of A&M, and reverting back to MJM. The relationship between MJM and ARSI had predated the Forwarding Attorney Agreement and MJM was known to ARSI. ARSI changed the

5

identification of A&M in their systems to MJM and transitioned the relationship immediately and seamlessly to MJM. ~~The parties~~ARSI -and MJM thereafter continued to function and do business together under the Forwarding Attorney Agreement exactly as they had when serviced by A&M.

~~19.~~20. In ~~l~~Late 2020, ARSI terminated the Forwarding Attorney agreement without cause under the express terms of the contract, but in bad faith and not in fair dealing.

~~20.~~21. ARSI's bad behavior and retaliation against MJM has materially breached the express provisions of the contract and covenants of good faith and fair dealing implied in all contracts.

22. ARSI has materially breached the Forwarding Attorney Agreement and MJM has been damaged as a direct result of such material breach.

~~21.~~23. The express provisions of the Forwarding Attorney Agreement state that the parties agree that the state courts of Maryland shall have exclusive jurisdiction in the event that MJM files suit against ARSI in any dispute arising out of the Forwarding Attorney Agreement or the dealings between the parties.

WHEREFORE, Plaintiff MJM respectfully requests that this Honorable Court enter judgment in its favor and against Defendant ARSI. Pursuant to Maryland Rule 2-305(b), Plaintiffs request a money judgment in an amount exceeding Seventy-Five Thousand Dollars ($75,000), representing compensatory damages, attorneys' fees, pre- and post-judgment interest, court costs, and any further relief as this Honorable Court deems proper.

## COUNT II
*Unjust Enrichment*

~~22.~~24. Plaintiff incorporates paragraphs one (1) through sixteen (16) as fully set forth herein.

6

~~23.~~25.     MJM tendered legal services to ARSI on the accounts it placed.

~~24.~~26.     ARSI appreciated and had knowledge of this benefit conferred by MJM on its accounts.

~~25.~~27.     ARSI took back the accounts that it placed, without paying for the valuable legal services rendered.

~~26.~~28.     It is inequitable for ARSI to take the legal accounts from MJM, retain the benefit of the services rendered, not allow MJM to recover fees in the ordinary course of collection, and fail to compensate MJM in any way.

WHEREFORE, Plaintiff MJM respectfully requests that this Honorable Court enter judgment in its favor and against Defendant ARSI. Pursuant to Maryland Rule 2-305(b), Plaintiffs request a money judgment in an amount exceeding Seventy-Five Thousand Dollars ($75,000), representing compensatory damages, attorneys' fees, pre- and post-judgment interest, court costs, and any further relief as this Honorable Court deems proper.

### COUNT III
*Quantum Meruit*

~~27.~~29.     Plaintiff incorporates paragraphs one (1) through sixteen (16) as fully set forth herein.

~~28.~~30.     MJM rendered a valuable benefit to ARSI and continues to render such benefit for legal services.

~~29.~~31.     The benefit was and continues to be accepted by ARSI, who receives the full use and benefit of the legal work on files placed by ARSI.

~~30.~~32.     All benefits rendered to ARSI were and continue to be under such circumstances that ARSI knows that MJM expects to be paid for the services provided to Defendant.

~~31.~~33.   MJM requests the value of its legal services rendered by MJM for the benefit of

ARSI, *quantum meruit*, in an amount in excess of $75,000.

WHEREFORE, Plaintiff MJM respectfully requests that this Honorable Court enter judgment in its favor and against Defendant ARSI. Pursuant to Maryland Rule 2-305(b), Plaintiffs request a money judgment in an amount exceeding Seventy-Five Thousand Dollars ($75,000), representing compensatory damages, attorneys' fees, pre- and post-judgment interest, court costs, and any further relief as this Honorable Court deems proper.

### COUNT IV
*Negligence*

~~32.~~34.   Plaintiff incorporates paragraphs one (1) through sixteen (16) as fully set forth herein.

~~33.~~35.   At all times ARSI owed duties of care to MJM to conduct business in a professional manner, convey information timely, provide necessary communications, information, and documentation, accurately and honestly, and conduct themselves and their communications in good faith and fair dealing.

~~34.~~36.   ARSI breached its duties, including by making misrepresentations of fact, threat, illegality, failing to provide MJM with timely documents and information, failing to act, and leveling blame on MJM for its own incompetent behavior and negligence.

~~35.~~37.   ARSI and its agents placed the Robinson account with MJM without certain vital information which likely would have avoided the failed settlement and regulatory complaints. James Garrett, Esq., the General Counsel of ARSI, negligently failed to keep all parties advised of the authority provided MJM to settle the Robinson account, causing the spread of misinformation, and thereafter, misrepresented his prior conduct, in an effort to deflect blame from himself and ARSI.

~~36.~~38. As a proximate result of ARSI's breach of its duties, MJM suffered damages.

WHEREFORE, Plaintiff MJM respectfully requests that this Honorable Court enter judgment in its favor and against Defendants ARSI. Pursuant to Maryland Rule 2-305(b), Plaintiffs request a money judgment in an amount exceeding Seventy-Five Thousand Dollars ($75,000), representing compensatory damages, attorneys' fees, pre- and post-judgment interest, court costs, and any further relief as this Honorable Court deems proper.

---

Christopher S. Young, Esq.
CPF No.: 9612190314
Email: cyoung@btlg.us

Business & Technology Law Group
6310 Hillside Court
Suite 160
Columbia, MD 21046
Telephone: (410) 290-0707
Facsimile: (410) 290-0477
*Attorneys for Plaintiff*